JOURNAL ENTRY AND OPINION
Plaintiff-appellant Dennis Yeckley (Dennis) appeals from an order entered by the Cuyahoga County Court of Common Pleas, Juvenile Division, which granted custody of the minor children to his common law wife, defendant-appellee Penny Yeckley (Penny). The Yeckleys have five minor children: Melinda, dob 10/11/83; Dennis, Jr., dob 11/22/84; Nicole, dob 7/15/87; John, dob 5/27/90; and Ashley, dob 4/3/92.
At some point, unclear in the record, the Yeckleys separated and the children lived with their mother. On August 5, 1996, Dennis Yeckley made an application with Juvenile Court to determine custody of the children. An interim agreement was reached by Mr. and Mrs. Yeckley placing the children with Dennis during the week and with Penny on the weekends. On July 29, 1997, Dennis again filed a motion for temporary custody. After a hearing was held on August 26, 1997[1], the magistrate held a hearing and found that the children should continue to reside with Dennis and attend school in Euclid. Interim visitation was to be set by the guardian ad litem, Attorney Donald Ristity. On February 12, 1998, the court ordered that Melinda be returned to her mother's care after there were allegations of abuse regarding Dennis.
After various motions regarding custody were filed by the parties, the parties came to an agreement which was to go into effect on September 7, 1999. The agreement was signed by the magistrate, the guardian ad litem, the parties, and their attorneys. The agreement states that it was reached after an in camera discussion with the minor children and that it was entered with the consent of the guardian ad litem.
In substance, the parties agreed that, as to the four youngest children, Dennis would be the residential parent for purposes of schooling only and that the children would attend school in the Euclid School System. Melinda was to reside with Penny and attend school in the Cleveland School System. All of the children were to reside with Penny on the weekends. The parties agreed that Dennis was to refrain from corporal punishment and the agreement specified that, should [Dennis] invoke any corporal punishment upon the minor children, possession of all minor children shall immediately revert to [Penny] until further order of court. The agreement also stated that defamatory language shall not be used by the parties. The parties agreed that Dennis was not to interfere with the transfer of the children on Friday afternoons to Penny and that he was not to appear on school grounds. The failure to properly surrender the children would cause Dennis to immediately be in contempt of court. Such contempt would cause the court to conduct an immediate emergency hearing. A review hearing was to be set four weeks after the agreement went into effect.
On September 15, 1999, Penny filed an affidavit with the court regarding Dennis' violation of the agreement. Penny affirmed that Dennis had failed to return her son John to her custody and used defamatory language. Further, Dennis called Ashley a bitch and attempted to strike her in the face. As she was fending off this blow from Dennis, Ashley's finger went in her eye. In her affidavit Penny states that Nicole verifies this as she was in the car when the incident occurred. Penny affirmed that Dennis had blocked out her name on a school form for release of information for Dennis, Jr. Finally, Penny affirmed that Dennis had repeatedly interfered with the transfer of the children, used corporal punishment and defamatory language, and had disallowed complete access to the children's records.
At the agreed-upon review hearing on October 6, 1999, the following colloquy is on the record:
 THE COURT: I'm getting there. This matter has been called at 10:35 a.m. and the parties are present. Mr. Mark Glassman, attorney for Dennis Yeckley, is not present. He has been paged. The Court has been given an affidavit filed with the Court on September 15th, alleging that Dennis Yeckley is in violation of the agreement that he signed on 9-3-99. Have you seen a copy of this affidavit:
MR. YECKLEY: No, I have not.
 THE COURT: Well, your attorney said that he was going to share it with you. And I'll tell you what, while I'm finishing could you do me a favor, Donna? Make a copy of that — unless you — do you have a copy?
MS. (UNIDENTIFIED): No, but he can use this.
MS. (UNIDENTIFIED): No, I do have a copy.
 THE COURT: Okay. No, that's fine. As long as he has — can he have that?
MS. (UNIDENTIFIED): Yes, he may, Your Honor.
 THE COURT: Okay. Yeckley has indicated that he wishes —
 MS. (UNIDENTIFIED): I think somebody gave him the affidavit.
THE COURT: That's all I'm interested in.
MS. (UNIDENTIFIED): Oh, I'm sorry.
THE COURT: — to proceed without Mr. Glassman.
 MS. (UNIDENTIFIED): Your Honor, let me put on the record also, in addition to your paging of Mr. Glassman. I too have called him at his office, which is in his home, and there was no answer.
 THE COURT: Counsel for the mother also called Mr. Glassman today. Again, Mr. Yeckley has indicated that he wishes to proceed without Mr. Glassman; is that true?
* * *
MR. YECKLEY: Yes, I want to proceed.
(T. 10/6/99, 1-3.)
The court thereafter proceeded with the hearing. The court placed both Dennis and Penny under oath and then proceeded to question them both regarding the allegations in the affidavit. Dennis stated that he had not interfered with visitation and that Ashley did not have a red eye. The court then had a discussion with the guardian ad litem who indicated that John had refused visitation with Penny. Dennis alleged that Penny was also noncompliant with the agreement as she permits the children to be tardy to school every Monday.
When the court began to give its order to the parties, it began by noting that in the past it had spoken with each of the children in camera and that it had concerns regarding Dennis' discipline of the children. Dennis inquired as to whether he was permitted to speak. The court indicated that Dennis would be given a chance to bring in his witnesses, but that this had been a review hearing and was not the time for witnesses. The court then permitted Dennis to speak regarding the schooling of Melinda, religious education, the language Penny uses towards the children, and the fact that Penny has not submitted to drug testing or counseling.
The court ultimately found, based on concerns for the safety of the children, that Penny would be the residential parent. The court determined that Dennis would be entitled to visitation, but that it would be determined at a later date. The parties were ordered to continue counseling; that Cuyahoga County Department of Children and Family Services (CCDCFS) should monitor and/or evaluate the homes of the parties; and, that both parties would have full access to all school and medical records of the children. A hearing was set for December 6, 1999. The court's order was journalized on October 14, 1999, and substantially reiterated the court's oral decision. In the order, the court noted that it was in receipt of the report of the guardian ad litem.
The appellant has set forth two assignments of error.
The first assignment of error:
 TRIAL COURT ABUSED ITS DISCRETION BY COMPELLING PLAINTIFF TO PROCEED AT HEARING WITHOUT LEGAL COUNSEL.
In this assignment of error, the appellant asserts that the trial court abused its discretion in proceeding with the review hearing in the absence of his counsel, that he was not permitted to directly examine the appellee while counsel for the appellee was permitted to examine the appellee, and that he was not permitted to call witnesses prior to the trial court entering its order.
The Juvenile Court has jurisdiction in child custody matters pursuant to R.C. 2151.23(F) and pursuant to In Re Torok (1954), 161 Ohio St. 585
at syllabus 1, which held:
 Under the provisions of Section 1639-16, General Code (Section 2151.23, Revised Code), the Juvenile Court is invested with original jurisdiction to determine the custody of any child not a ward of another court.
In such custody matters, an indigent litigant is entitled to counsel, which in this case was duly appointed by the trial court. See State ex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44.
The record before this court clearly demonstrates that the appellant indicated to the court that he wished to proceed without counsel. As the appellant points out, he had been represented by counsel at various proceedings and throughout the initial custody agreement by counsel. The court and opposing counsel attempted to contact the attorney the day of the review hearing, but were unsuccessful. It is also noteworthy that at the full hearing held on December 6, 1999, the appellant and his counsel were both present, however, the appellant chose to proceed pro se on the certain issues. Thus, this court may find that the appellant was aware of his right to counsel and made an informed choice to proceed with the review hearing in the absence of counsel.
Turning next to the procedure at the hearing itself, Juv.R. 27(A) specifically provides that the Juvenile Court may conduct its hearings in an informal manner. However, where the court relies on testimony in reaching its decision, the witnesses should be placed under oath. In re Fleming (July 22, 1993), Cuyahoga App. No. 63911, unreported.
Here, contrary to the appellant's assertion, a perusal of the transcript of the review hearing held on October 6, 1999, shows that he was not directly examined by counsel for appellee. Rather, the court conducted a discussion, albeit under oath, with the appellant and with the appellee. Counsel for the appellant and the guardian ad litem brought information to the court's attention or added information as needed, but did not engage in any questioning. The appellant suffered no prejudice from the court's chosen method of informally eliciting information from both parties during this review hearing.
As to the appellant's assertion that he was prohibited from calling witnesses at the review hearing, this court finds that it was within the trial court's authority, upon concerns for the children's safety, to determine that removal from the appellant's custody was in their best interest. The appellant was provided with a full hearing on December 6, 1999, a relatively short time later under the circumstances.
The appellant's first assignment of error is overruled.
 TRIAL COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF VISITATION WITH HIS MINOR CHILDREN.
The appellant asserts that the trial court erred in denying him visitation subsequent to the review hearing held on October 6, 1999. The premiss of the argument is incorrect.
The record shows that he was not denied visitation, rather, the court held that he was entitled to visitation, but that the parameters of the visitation would be decided at a later date. In the same paragraph the court held that the parties were to continue counseling. At the hearing held on December 6, 1999, the appellant stated that he had been permitted visitation by the appellee on one occasion.[2] The court was cognizant that the holidays were around the corner and scheduled an in camera discussion with the children for December 15, 1999. Given the allegations of abuse, the long and tortuous course this case had taken, and the temperaments of the parties, the magistrate did not abuse its discretion in scheduling an interview with the children prior to permitting visitation.
The appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
ANN DYKE, A.J., and
LEO M. SPELLACY, J., CONCUR.
__________________________ JAMES D. SWEENEY, JUDGE
[1] On December 22, 1998, this order was journalized.
[2] The court clarified that no visitation was ordered, so the appellee was not in violation of the court's order.